UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-CV-21332-CIV-GOLD/MCALILEY

MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

**CORRECTED[1] ORDER GRANTING IN PART UNITED STATES' MOTION TO DENY PETITION TO QUASH [ECF NO. 15]; DENYING TRIBE'S REQUEST TO QUASH SUMMONS ON GROUNDS OF TRIBAL IMMUNITY, OVERBREADTH, AND IRRELEVANCE; SETTING ADVERSARY HEARING ON ISSUES OF LEGITIMATE PURPOSE AND POSSESSION OF REQUESTED INFORMATION**

THIS CAUSE is before the Court upon the United States' Motion to Deny the Miccosukee Tribe of Indians' Petition to Quash IRS Summons to Morgan Stanley **[ECF No. 15]** ("the Motion"), filed on June 21, 2010. On July 21, 2010, the Miccosukee Tribe of Indians ("the Tribe") filed a response in opposition **[ECF No. 17]**, and on August 2, 2010, the United States ("the Government" or "the United States") filed a reply **[ECF No. 19]**. Oral argument on the Motion was held on Monday August 9, 2010. I have jurisdiction pursuant to 26 U.S.C. § 7609(h).[2] Having considered the Motion, the record, the applicable

---

[1] Paragraph 1 on page 15 has been clarified to avoid confusion.

[2] Section 7609(h) provides, in pertinent part, that "[t]he United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any [proceeding to quash]." The parties do not dispute that the party summoned, Morgan Stanley, has a branch office in Miami and is thus "found" in this District for purposes of Section 7609(h). *Berkowitz v. United States*, 2009 WL 4004603, at *1 (D.S.C. Sept. 23, 2009) (concluding that "[a] branch office indicates a significant presence within the district, and . . . is sufficient to support subject matter jurisdiction under 26 U.S.C. § 7609(h)(1)") (quoting *Williams v. United States*, 2005 WL 3105404, at *2 (E.D. Tenn.2005)).

law, and being otherwise fully advised, I deny the Tribe's request that the Summons be quashed on grounds of tribal sovereign immunity, overbreadth, and irrelevance. However, pursuant to Eleventh Circuit case law discussed below, a limited adversary hearing will be held regarding the Tribe's allegations that: (a) the Summons was issued in bad faith for an improper purpose; and (b) the United States is already in possession of the requested information.

## I.     Introduction and Background

While Indian tribes are "not taxable entit[ies]" and tribal income is generally exempt from federal income tax statutes, it is well-settled that, as a general rule, Indians are subject to the same income tax and employment tax obligations as other United States citizens unless a treaty, federal statute, or other law provides otherwise, regardless of whether he or she is a "tribal council member[] or officer." Rev. Rul. 67-284, 1967-2 C.B. 55; *Squire v. Capoeman*, 351 U.S. 1, 6 (1956) ("[I]n ordinary affairs of life, not governed by treaties or remedial legislation, [Indians] are subject to the payment of income taxes as are other citizens."). This much is not in dispute.

Nor is it disputed that the Internal Revenue Service ("IRS") has the authority to investigate individual taxpayers for potential offenses and to demand the production of records in connection with such investigations. *Nero Trading, LLC v. United States*, 570 F.3d 1244, 1248 (11th Cir. 2009) (per curiam) (noting that "Section 7602 vests the Service with the authority to issue a summons for the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . , or collecting any such liability")  (citations and internal quotation marks omitted).

2

However, when the IRS seeks records relating to an Indian tribe in connection with an investigation of an individual taxpayer, thorny issues of tribal sovereignty can complicate matters. Such is the case here.

Based on evidence gathered thus far, the IRS suspects that Billy Cypress ("Cypress"), a former Chairman of the Miccosukee Tribe, derived a substantial amount of unreported income from the Tribe by using charge cards linked to a Tribe financial account for personal purchases. In connection with this ongoing investigation, the IRS has summoned a limited number of Tribe-related financial records from a third-party financial institution in an attempt to ascertain Cypress' tax liability for certain taxable periods. According to the IRS, a review of the summoned documents will help shed light on the correctness of Cypress' tax returns for the taxable periods at issue. The Tribe has now petitioned this Court to quash the IRS Summons, arguing, *inter alia*, that it is impermissibly overbroad and unenforceable based on principles of tribal sovereign immunity. I address each of the Tribe's arguments below.

## II.     Procedural History

As noted, these proceedings arise out of the Internal Revenue Service's investigation of Billy Cypress, a former Chairman of the Miccosukee Tribe. The investigation – which was commenced by the IRS when it obtained information regarding Cypress' potential tax liability during the course of a separate investigation – resulted in the issuance of an administrative summons to third-party Morgan Stanley Smith Barney. *See generally* **[DE 1]** ("the Petition"); **[ECF No. 15-5]** ("the Revenue Agent Declarations"). The Summons requested records and information relating to Cypress' use of charge cards ("the FMA Cards") linked to a Tribe Financial Management Account ("the FMA Account)

maintained at Morgan Stanley Smith Barney.  *See* **[ECF No. 1-3]** ("the Summons").

Specifically, the Summons demanded that Morgan Stanley Smith Barney do the following: (1) produce records for the Tribe's FMA Account[3] for the period of January 1, 2003 through December 31, 2005, including the account application and signature cards; (2) produce records, including FMA Card Purchase Receipts, Charge Receipts, Charge Instruments, and/or Charge Transmittals for the FMA Cards issued on the account whose card numbers end in 6045 and 6046 for the period of January 1, 2003 through December 31, 2005 for the Tribe's FMA Account; (3) specify the names of the individuals (or businesses) who are issued the FMA Cards for the card numbers ending in 6045 and 6046 for the period of January 1, 2003 through December 31, 2005; (4) specify the names of the individuals (or businesses) named on the FMA Cards for the card numbers ending in 6045 and 6046 for the period of January 1, 2003 through December 31, 2005 and who is authorized to use these cards for the Tribe's FMA Account; (5) specify which FMA Cards Billy Cypress is authorized to use and which FMA Cards are issued in his name on the Tribe's FMA Account; and (6) furnish the name, address, and contact information of its Third Party Credit Card Processor.  (Summons at ¶¶ 1-6).

Upon receiving Notice of the Summons, the Tribe initiated these proceedings pursuant to Section 7609(b) of the Internal Revenue Code.  In its April 26, 2010 Petition to Quash, the Tribe argued that the Summons is unenforceable because: (1) Tribe is a sovereign entity entitled to tribal sovereign immunity under federal common law; (2) the

---

[3] The account number for the FMA Account – which is the only account at issue in these proceedings – will not be reproduced here.  However, to avoid confusion, I note that the FMA Account number ends in 13 140.

Summons has been issued for an improper purpose; (3) the Summons is overbroad insofar as it "seeks production of all records for all accounts belonging to the *entire* [Tribe], which, unlike its individual members . . . is not subject to federal income tax"; (4) the Summons "is not relevant to an alleged investigation of one individual tribal member"; (5) the Summons "was issued in bad faith" and "constituted an improper fishing expedition against the Tribe"; and (6) "it appears that [the requested] documents were produced over four years ago." (Pet. at ¶ 5(a)); (Tribe's Resp. to Govt. Mot. at 18). In response to the Tribe's Petition to Quash, the United States filed a Motion to Deny the Petition, **[ECF No. 15]**, which is currently before this Court.

### III.   Analysis

#### A.   Tribal Sovereign Immunity

Before delving into the substance of the Summons, I first address the question of tribal sovereign immunity, which the Tribe has asserted as a defense to the enforcement of the Summons. While the doctrine of sovereign immunity is most frequently invoked in actions involving state and federal governmental entities, "[t]he doctrine of sovereign immunity also applies to Indian tribes. Like the national and state governments, Indian tribes are sovereign entities and therefore possess similar powers of sovereign immunity." Nicholas V. Merkley, *Compulsory Party Joinder and Tribal Sovereign Immunity: A Proposal to Modify Federal Courts' Application of Rule 19 to Cases Involving Absent Tribes as "Necessary" Parties*, 56 Okla. L. Rev. 931, 940 (2003).

Tribal sovereign immunity is a principle of federal common law, and the Supreme Court has consistently re-affirmed the general rule that "an Indian tribe is subject to suit only where Congress has authorized suit or the tribe has waived its immunity." *Kiowa Tribe*

*v. Mfg. Tech., Inc.*, 523 U.S. 751, 754, 759 (1998). However, this rule is not absolute, and federal appeals courts – including the Eleventh Circuit – have consistently recognized that "[t]ribal sovereign immunity does not bar suits by the United States" and cannot be invoked "to prevent the federal government from exercising its superior sovereign powers." *Florida Paraplegic Ass'n v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126, 1135 (11th Cir. 1999) (quoting *Reich v. Mashantucket Sand & Gravel*, 95 F.3d 174, 182 (2d Cir. 1996)); *United States v. Red Lake Band of Chippewa Indians*, 827 F.2d 380, 382 (8th Cir. 1987) ("We conclude it is an inherent implication of the superior power exercised by the United States over the Indian tribes that a tribe may not interpose its sovereign immunity against the United States."); *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1459-60 (9th Cir. 1994).[4]

In a footnote, the Tribe acknowledges some of the aforementioned cases and then asserts – without actually addressing most of the cases – that "tribal sovereign immunity applies absent explicit waiver of Congress." (Pet. at 7). This argument overlooks the substance of the cases cited above, none of which relied on an "explicit waiver" of Congress. Instead, the cases concluded that because tribal sovereign immunity could not be asserted against the federal government, the "explicit waiver" issue was entirely irrelevant. For example, in *Paraplegic*, the Eleventh Circuit specifically noted that "Congress fail[ed] to abrogate Indian tribes' sovereign immunity under Title III of the ADA." 166 F.3d at 1134. Yet, the Eleventh Circuit concluded that the statute was still enforceable

---

[4] The United States Supreme Court has also acknowledged this principle, albeit in *dictum*. *Washington v. Confederated Tribes of Colville*, 447 U.S. 134, 153-54 (1980) ("[I]t must be remembered that tribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the States.").

6

with respect to Indian tribes because: (1) Title III permits the Attorney General of the United States to bring suit against those "engaged in a pattern or practice of discrimination"; and (2) "[t]ribal sovereign immunity does not bar suits by the United States." *Id.* at 1134-35. In other words, despite the absence of an explicit tribal immunity waiver, tribes cannot assert immunity in such actions because the enforcing party would be the United States – i.e., a "superior sovereign" not subject to the defense of tribal sovereign immunity. *See id.* (quoting *Babbitt*, 18 F.3d at 1459-60).

Even more on point is the *Red Lake* case, in which the Red Lake Band of Chippewa Indians ("the Red Lakes") argued that tribal sovereign immunity precluded the United States from obtaining tribal court records under the Federal Records Act. 827 F.2d at 381. The district court rejected this argument, holding that "sovereign immunity may not be asserted by an Indian tribe against the United States." *Id.* at 381-82. On appeal, the Red Lakes "acknowledged that tribal sovereign immunity is not absolute as against the federal government," but argued that the district court had erred nonetheless because there had been no express Congressional waiver of sovereign immunity, citing the Supreme Court's decision in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978).[5] *Id.* The Eighth Circuit[6] unequivocally rejected this argument, affirming the district court's grant of summary judgment in favor of the Government and "conclud[ing] it is an inherent implication of the superior power exercised by the United States over the Indian tribes that a tribe may not

---

[5] This is the very same case upon which the Tribe relies in its Petition to Quash. (Pet. at 7 n.2).

[6] "[T]he Eighth, Ninth, and Tenth Circuits . . . decide the vast majority of Indian law cases." Judith V. Royster, *Stature and Scrutiny: Post-Exhaustion Review of Tribal Court Decisions*, 46 U. Kan. L. Rev. 241, 246 n.27 (1998).

interpose its sovereign immunity against the United States." *Red Lake*, 827 F.2d at 382-83.

Here, as in the *Red Lake* case, the Miccosukee Tribe is attempting to use tribal sovereign immunity as a shield to protect a limited class of records from the scrutiny of the United States. This it may not do. Because "tribal sovereign immunity may not be asserted against the United States" in such a case, the Tribe's immunity argument fails as a matter of law and the enforceability of the Summons at issue must be assessed in accordance with the framework articulated by the Supreme Court in *United States v. Powell*, 379 U.S. 48 (1964). *See Red Lake*, 827 F.2d at 383.[7]

    B.    <u>Powell Analysis</u>

        1.    <u>IRS Summons Authority</u>

The IRS has authority to inquire into any offense connected with the administration or enforcement of the United States' internal revenue laws by issuing a summons to the taxpayer or any other person the IRS deems proper to appear before the IRS and produce all records that "may be relevant or material to [the] inquiry." 26 U.S.C. § 7602(a); *Nero Trading, LLC*, 570 F.3d at 1248 (noting that "Section 7602 vests the Service with the authority to issue a summons '[f]or the purpose of ascertaining the correctness of any

---

[7] Although I need not reach the issue, I note that even if the Tribe could assert tribal sovereign immunity against the United States, its immunity would not encompass the facts of the instant case given that this does not appear to be a "suit [] against the sovereign." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) ("The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.") (citations and internal quotation marks omitted). Furthermore, case law indicates that records in the custody of a third-party custodian are not imbued with the protections of tribal sovereign immunity. *See Allen v. Woodford,* 543 F. Supp. 2d 1138, 1144 (E.D. Cal. 2008) (indicating that principles of tribal sovereign immunity cannot be invoked to quash subpoenas directed at third-party records custodians).

return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . , or collecting any such liability") (citations omitted).

As the Supreme Court has explained:

Our complex and comprehensive system of federal taxation, relying as it does upon self-assessment and reporting, demands that all taxpayers be forthright in the disclosure of relevant information to the taxing authorities. Without such disclosure, and the concomitant power of the Government to compel disclosure, our national tax burden would not be fairly and equitably distributed. In order to encourage effective tax investigations, Congress has endowed the IRS with expansive information-gathering authority; Section 7602 is the centerpiece of that congressional design.

*United States v. Arthur Young & Co.*, 465 U.S. 805, 815-16 (1984); *see United States v. Bisceglia*, 420 U.S. 141, 146 (1975) ("The purpose of [Section 7602] is not to accuse, but to inquire. Although such investigations unquestionably involve some invasion of privacy, they are essential to our self-reporting system, and the alternatives could well involve far less agreeable invasions of house, business, and records.").

The Supreme Court has "consistently construed congressional intent to require that if the summons authority claimed is necessary for the effective performance of congressionally imposed responsibilities to enforce the tax Code, that authority should be upheld absent express statutory prohibition or substantial countervailing policies." *United States v. Euge*, 444 U.S. 707, 711 (1980). While Section 7602 is "subject to the traditional privileges and limitations,"[8] *id.* at 714, any other restrictions upon the IRS's summons power should be avoided given that "the language of Section 7602 suggests an intention to codify a broad testimonial obligation . . . ." *Euge*, 444 U.S. at 714; *United States v.*

---

[8] "[F]or example . . . the attorney-client privilege and the attorney work product doctrine limit the scope of the IRS summons power." *Matter of Newton*, 718 F.2d 1015, 1021 (11th Cir. 1983).

*Bichara*, 826 F.2d 1037, 1039 (11th Cir. 1987) ("[t]he IRS'[s] summons power is broad and expansive") (citations omitted).

### 2. The Burden-Shifting Test

The controlling framework for determining the enforceability of an IRS summons[9] was articulated by the Supreme Court in the seminal case of *United States v. Powell*, 379 U.S. 48 (1964). The first step, according to *Powell*, is that the IRS must:

> show [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commissioner's possession, and [4] that the administrative steps required by the Code have been followed – in particular, that the 'Secretary or his delegate,' after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect.

*Id.* at 57-58; *United States v. Morse*, 532 F.3d 1130, 1132 (11th Cir. 2008) (applying the *Powell* framework). This burden has been described as "minimal" and "the [IRS] need not meet any standard of probable cause to obtain enforcement . . . ." *Matter of Newton*, 718 F.2d 1015, 1018 (11th Cir. 1983); *Powell*, 379 U.S. at 57. Rather, the IRS "can satisfy its burden merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts . . . ." *United States v. Leventhal*, 961 F.2d 936, 940 (11th Cir. 1992) (quoting *La Mura v. United States*, 765 F.2d 974, 979 (11th Cir.1985)).

Once the Government makes this minimal showing, "the burden [then] shifts to the party contesting the summons to disprove one of the four elements of the [G]overnment's

---

[9] "The IRS has the same burden of proof in a proceeding to quash as it does in a summons enforcement proceeding." 35 Am. Jur. 2d *Federal Tax Enforcement* § 118 (2010); *see also Sugarloaf Funding, LLC v. United States Dept. of Treasury*, 584 F.3d 340, 345 (1st Cir. 2009) ("Regardless of who initiates the action, the court follows a familiar structured analysis [set forth in *Powell*] in a summons enforcement proceeding").

prima facie showing or convince the court that enforcement of the summons would constitute an abuse of the court's process." *Id.* at 940-41. "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. The burden on the contesting party to rebut the government's prima facie case or demonstrate an abuse of process "is 'a heavy one,' requiring allegation of specific facts and introduction of evidence." *Leventha*l, 961 F.2d at 940 (citations omitted).  However, such evidence need not be presented without a hearing, and the Eleventh Circuit "ha[s] held that 'an allegation of improper purpose is sufficient to trigger a limited adversary hearing where the taxpayer may question IRS officials concerning the Service's reasons for issuing the summons.'" *Nero*, 570 F.3d at 1249 (quoting *United States v. Southeast First Nat'l Bank*, 655 F.2d 661, 667 (5th Cir.1981)).

In the instant case, the four factors required to make out a prima facie case for the enforcement of the Summons have been adequately demonstrated by the sworn declaration of the issuing agent, Agent John R. Johnson. Specifically, Agent Johnson's Declaration[10] states that: (1) the purpose of the Billy Cypress investigation is to "learn more about Billy Cypress' potential tax liability" in light of the fact that "the IRS has already amassed significant evidence suggesting that Cypress has received significant unreported

---

[10] I reject the Tribe's argument that the Agent Johnson's Declaration should be stricken in its entirety. The fact that Agent Johnson purports to "incorporate" another declaration by reference for contextual purposes does not render the entire declaration, which contains specific factual statements based on Agent Johnson's personal knowledge, inadmissible.  Thus, only the portions purporting to "incorporate" Agent Furnas' declaration may not be used as evidence. *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1261 (11th Cir. 2004) (affirming district court's decision to strike only the inadmissible portions of an affidavit).

income by converting tribal funds for his own use"; (2) the Summons was issued "for the proper purpose of continuing the IRS's investigation of Billy Cypress . . . [and] to confirm and further determine the extent of Billy Cypress' use of tribal funds for purchase and payment of various and possibly lavish personal expenses"; (3) "the IRS is not otherwise in possession of the summoned information"; and (4) Agent Johnson "followed all administrative steps required by the Internal Revenue Code for issuance of the [S]ummons]" and the information sought is "necessary . . . in order to properly determine Cypress' unpaid liability." (Johnson Decl. at ¶¶ 5, 10, 12, 13, 14). Thus, "the burden [now] shifts to [the Tribe] to disprove one of the four elements of the government's prima facie showing or convince [me] that enforcement of the summons would constitute an abuse of the court's process." *Leventhal*, 961 F.2d at 940-41.

### 3. The Tribe's Challenges to the Summons at Issue

As noted above, the Tribe has challenged the Summons on various grounds, some of which will require the Tribe to demonstrate certain facts at a limited adversary hearing.[11] However, the Tribe's challenges to the requests themselves – i.e., that they are overbroad and irrelevant – can be resolved on the papers.

With respect to relevance, the Tribe contends that the United States has failed to demonstrate "that the summoned material was relevant for an investigation" or "that the materials [requested] are needed for an investigation of the former Chairman of the Tribe." (Tribe's Resp. to Govt. Mot. at 17-18). This argument is premised on the assumption that the United States is required to demonstrate an actual and objective "need" for the

---

[11] *See* Section II(B)(4), *infra*.

materials requested in order for the Summons to be enforceable.  No such showing is required.[12]  *United States v. Arthur Young & Co.*, 465 U.S. 805, 813-14 (1984) ("[T]he Service therefore should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense.").  To the contrary, the Supreme Court has held that an IRS summons will satisfy the "potential relevance" requirement of Section 7602 so long as "the documents at issue 'might have thrown light upon the correctness of the return.' "  *Id.* (citing various cases).  Thus, "[a]s long as there is a legitimate purpose for the investigation, such as determining tax liability . . . [t]he IRS may issue summonses for documents that are even *potentially* relevant to an ongoing investigation."  *Arnold v. United States*, 635 F. Supp. 88, 90 (M.D. Fla. 1986) (emphasis in original).  The purpose of this rule is clear, for "the Service can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized."  *Arthur Young*, 465 U.S. at 814.

Here, it is undisputed that Billy Cypress is subject to the federal income tax, that the IRS is investigating whether Cypress derived unreported income from the Tribe's FMA Account during the 2003-2005 tax periods, that the information demanded by the Summons relates to the Tribe's FMA Account, and that the Government's requests are limited to the 2003-2005 tax periods.  As such, I conclude that the information demanded "might have thrown light upon the correctness of [Cypress'] return[s]" and that the Summons thus meets the "potential relevance" requirement of Section 7602.

---

[12] Under *Powell*, the only "necessity" requirement is a determination *by the "Secretary [of the Treasury] or his delegate*, after investigation, [that] further examination [is] necessary . . . ."  *Powell*, 379 U.S. at 58 (emphasis added) (internal quotation marks omitted).  This requirement is clearly satisfied by Agent Johnson's declaration, which states that the IRS has been investigating Billy Cypress and that "[i]t is necessary to obtain the testimony and to examine the books, records, or other data sought by the [S]ummons in order to properly determine Cypress' unpaid liability."  (Johnson Decl. at ¶¶ 10, 13).

Finally, I turn to the Tribe's assertion of overbreadth. (Pet. at ¶ 5(e)). Under Eleventh Circuit case law, "[a]n IRS summons is overbroad if it does not advise the summoned party what is required of him with sufficient specificity to permit him to respond adequately to the summons." *United States v. Medlin*, 986 F.2d 463, 467 (11th Cir. 1993) (citation and internal quotation marks omitted); *see also United States v. Wyatt*, 637 F.2d 293, 302 n. 16 (5th Cir. 1981) (noting that relevance and overbreadth are distinct inquiries in the context of IRS summons enforcement proceedings). Thus, an IRS summons is not overbroad if it "specifie[s] the subject matter of the documents requested, the source of those documents and the limited time period from which the documents were to be drawn." *Medlin*, 986 F.2d at 467. In the instant case, the Summons clearly identified the subject-matter of the information requested (i.e., the FMA Account linked to the charge cards allegedly used by Billy Cypress), the source of the requested information (i.e., Morgan Stanley Smith Barney), and the limited time period from which the requested information was to be drawn (i.e., "Taxable Periods Ending December 31, 2003; December 31, 2004; December 31, 2005"). (Summons at 1).[13] Accordingly, the Summons is not overbroad.

    4.    <u>Limited Adversary Hearing</u>

Because the Tribe's allegations of bad faith, improper purpose, and the Government's purported possession of the information at issue raise factual questions that cannot be resolved on the papers, I will hold a "limited adversary hearing" on August 20, 2010 regarding these narrow issues. *Nero*, 570 F.3d at 1249. ("Generally, the scope of any adversarial hearing in this area is left to the discretion of the district court."). However,

---

[13] The Summons did not, as the Tribe contends, demand a blanket production of "all records for all accounts belonging to the *entire* Miccosukee Tribe of Indians of Florida." (Pet. at ¶ 5(d)) (emphasis in original).

14

the Tribe will not be permitted to take traditional discovery in anticipation of this hearing. *Nero*, 570 F.3d at 1249 (agreeing with Fifth Circuit "that '[d]epositions, interrogatories, and the rest of the panoply of expensive and time-consuming pretrial discovery devices may not be resorted to as a matter of course and on a mere allegation of improper purpose.'") (quoting *In re E.E.O.C.*, 709 F.2d 392, 397-98 (5th Cir. 1983)).  Instead, the Tribe will be afforded an opportunity *at the hearing* to carry its "heavy burden" of rebutting the Government's prima facie case by introducing evidence and "question[ing] IRS officials" concerning: (1) "the Service's reasons for issuing the summons"; and (2) whether some (or all) of the records requested by the Summons are already in the IRS's possession.  *Id.* (citation and internal quotation marks omitted).[14]

**IV.    Conclusion**

Based on the foregoing, it is hereby ORDERED AND ADJUDGED that:

1. The United States' Motion to Deny the Petition to Quash **[ECF No. 15]** is GRANTED IN PART AND DENIED IN PART.

2. The Tribe's various challenges to the Summons are hereby REJECTED, with the exception of:

    a.   The Tribe's allegations of bad faith and improper purpose; and

    b.   The Tribe's contention that the Government is already in possession of the requested information.

3. In the event the parties are unable to amicably resolve this matter, an adversary hearing regarding <u>only</u>: (a) bad faith and improper purpose; and (b) whether the

---

[14]  I emphasize that the limited adversary hearing will not be a fishing expedition – that is, the Tribe will be limited to "demonstrating the truth (or falsity) of [its] allegations" of bad faith, improper purpose, and the Government's purported possession of the information at issue. *Nero*, 570 F.3d at 1249.

15

Government is already in possession of the requested information, is HEREBY SET before the Honorable Alan S. Gold, at the United States District Court, Courtroom 11-1, Eleventh Floor, 400 North Miami Avenue, Miami, Florida, on **Friday, August 20, 2010 at 3:15 p.m.** The Court has set aside approximately two hours for this matter. Please be prompt.

a.  Prior to the hearing, the parties shall present all direct testimony of witnesses – not to exceed two witnesses per side – by affidavit or declaration **no later than Monday, August 16, 2010 at 5:00 p.m.**

  i.  The declarations of Revenue Agents John R. Johnson and James M. Furnas may be offered as their direct testimony.

b.  At the hearing, counsel will be permitted to cross-examine witnesses; therefore, **all affiants/declarants must be present at the August 20, 2010 hearing**.

  i.  Any necessary translation services shall be provided by the parties.

c.  Additionally, Petitioner and Respondent shall each file Proposed Findings of Facts and Conclusions of Law SEVEN DAYS AFTER the August 20, 2010 adversary hearing (i.e., Friday, August 27, 2010).

  i.  Additionally, the parties shall submit their Proposed Findings of Fact and Conclusions of law to the Court's CM/ECF e-mail address at gold@flsd.uscourts.gov in WordPerfect Format.

DONE AND ORDERED in Chambers at Miami, Florida this 11th day of August 2010.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc: Counsel of record